IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JUNMAKIA HENLEY,

    Plaintiff,

v.

NATIONSTAR MORTGAGE, LLC,
et al.,

    Defendants.

CIVIL ACTION NO.
1:14-CV-2700-AT-LTW

**MAGISTRATE JUDGE'S ORDER AND REPORT
AND RECOMMENDATION**

    Pending before this Court are Plaintiff's First Amended Complaint ("Amended Complaint," Doc. 32); Defendants Nationstar Mortgage, LLC ("Nationstar"), Federal National Mortgage Association ("Fannie Mae"); and Mortgage Electronic Registration Systems, Inc.'s ("MERS") Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss," Doc. 35); and Defendants Nationstar, Fannie Mae, and MERS' (collectively, "Defendants") Motion to Stay Deadlines ("Motion to Stay," Doc. 36). For the reasons outlined below, Defendants' Motion to Dismiss should be **DENIED** (Doc. 35), and Defendants' Motion to Stay should be **GRANTED** (Doc. 36).

AO 72A
(Rev.8/82)

# I. BACKGROUND

Plaintiff, proceeding pro se, filed this action in Cobb County Superior Court on July 17, 2014.  (Compl., Doc. 1-1).  That action was removed to the Northern District of Georgia on August 20, 2014, by Defendants Nationstar, Fannie Mae, and MERS.  In her original form Complaint, Plaintiff appeared to allege a single primary cause of action for quiet title in relation to property located at 632 Parkside Village Way NW, Marietta, Georgia 30060 (the "Property"), and asked for the discharge of the debt associated with it. (Compl., p. 3 ("CAUSE OF ACTION"), pp. 6-7 ("DEMANDS" and "PRAYER FOR RELIEF")).  Plaintiff alleged that certain parties,[1] including Defendants, improperly handled the security deed and promissory note associated with the Property because, among other things, the security deed did not "follow" the promissory note; the security deed was "securitized" and/or discharged when the holders of the security deed wrote off the debt; unspecified defendants fraudulently or improperly assigned the security deed; and/or unspecified defendants violated regulations promulgated under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq.. (Compl. ¶¶ 14-57).  Plaintiff's original pro se Complaint was difficult to follow, frequently contradicted itself, and regularly failed to identify which defendant was alleged to have taken which action or was purportedly liable under which legal theory.

Plaintiff objected to removal and sought remand of the case, arguing that the

---

[1] Plaintiff also asserted her claims against former Defendants Suntrust Mortgage Inc. ("Suntrust") and McCalla Raymer, LLC ("McCalla").  (See Compl.).

threshold amount in controversy required for diversity jurisdiction had not been met; that diversity between the parties was lacking; and that there was no federal question jurisdiction. (Doc. 9). The Court found that diversity jurisdiction did exist, and Plaintiff's request for remand was denied.[2] (See Docs. 24, 26).

Two defendants – Defendants Suntrust and McCalla – named in the original Complaint were dismissed for lack of service. (Id.). The remaining Defendants – Nationstar, Fannie Mae, and MERS – moved to dismiss the claims in the original Complaint on substantive grounds, arguing that it was a shotgun pleading that failed to state a plausible claim for relief above the speculative level and that Plaintiff's claim for quiet title, as well as any underlying legal theories that may have been asserted in the Complaint, failed as a matter of law. (Docs. 4, 4-1). Plaintiff, still proceeding on a pro se basis, did not respond to the arguments. Nevertheless, the Court considered the merits of Plaintiff's original Complaint and Defendants' arguments for dismissal. (Docs. 24, 26). The Court agreed with Defendants that Plaintiff's Complaint was a shotgun pleading and that her claim for quiet title failed as a matter of law under the facts and legal theories asserted by Plaintiff. (Id.). The Court also found that to the extent Plaintiff sought to allege claims under Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq. and/or for fraud, such claims were also insufficient as a matter of law. (Id.). Accordingly, the Court dismissed the claims asserted against the remaining Defendants

---

[2] Because the Court found that diversity jurisdiction existed, it did not address the issue of federal question jurisdiction. (Doc. 24).

in Plaintiff's original Complaint.  (Id.).

In its March 11, 2015 Order on the Defendants' initial motion to dismiss, the District Court adopted this Court's recommendation and dismissed Plaintiff's claims against them, but allowed Plaintiff leave to file an amended complaint that conformed with, among other things, the following requirements: "if Plaintiff intends to renew her [TILA] and fraud claims . . . she must make allegations as to the specific facts of any such violation," and "[i]f Plaintiff intends to renew her assertion that her debt has been discharged and Defendants therefore fraudulently enforced the security deed . . . she must allege that the debt was paid and the date on which the debt was paid."  (Doc. 26, p. 3).

Plaintiff then obtained counsel, and filed a motion seeking reconsideration of the Court's March 11, 2015 Order on Defendants' initial motion to dismiss and requesting leave to assert additional legal theories beyond those allowed for in that Order.  (Doc. 29).  Because the motion amounted to a request for leave to amend, but failed to attach an amended complaint including those new and as-of-yet-unallowed legal theories, Plaintiff's motion was denied on May 14, 2015.  (Doc. 34).  The Court noted that Plaintiff was free to refile her request for leave to amend under Federal Rule of Civil Procedure 15(a)(2) to add such additional claims.  Plaintiff has not done so.[3]

---

[3] While Plaintiff reiterates in a footnote in her first Amended Complaint – otherwise filed in accordance with the District Court's March 11, 2015 Order – that she still would like the opportunity to add additional claims and to add McCalla back to the litigation as a defendant, Plaintiff still has not presented the Court with an amended complaint that in fact asserts such additional claims or parties, such that the Court

4

## II.     PLAINTIFF'S FIRST AMENDED COMPLAINT

Represented by counsel, Plaintiff filed her Amended Complaint on April 30, 2015. (Am. Compl., Doc. 32). In it, Plaintiff asserts claims solely against Nationstar for fraudulent and negligent misrepresentation. (Id.). Plaintiff contends that after her son fell ill in 2012, she missed work and her income fell. (Am. Compl. ¶ 5). Even so, as of November 2012, Plaintiff alleges that she was current on her mortgage payments. (Am. Compl. ¶ 7). Plaintiff states that she contacted Nationstar, the servicer of her mortgage, that same month about a loan modification, but that a Nationstar representative informed her that the company would only consider a loan modification if she were behind on her payments. (Am. Compl. ¶¶ 6, 8, 10). Plaintiff was allegedly instructed by the representative to stop making her payments in order to be evaluated for a modification and told that she "*would be* evaluated for a modification once she was behind . . . by three months." (Am. Compl. ¶ 9 (emphasis added)). The representative did not tell Plaintiff that she should recommence making mortgage payments after she was three months behind. (Am. Compl. ¶ 11).

Plaintiff alleges Nationstar then sent her a Home Affordable Modification Program ("HAMP") application package, which she completed and returned. (Am.

---

could assess the merit or futility of such claims as noted in the May 14, 2015 Order. (See Am. Compl., Doc. 32, n.1; see also Docs. 26, 34 (March 11 and May 14, 2015 Orders)). For the same reasons set forth in the May 14, 2015 Order, Plaintiff's request should be **DENIED**, though Plaintiff is still free to utilize Rule 15(a)(2) to present the Court with a motion for leave to amend attaching a proposed amended complaint to review.

Compl. ¶ 12). Upon following up with Nationstar shortly after returning the HAMP application, Plaintiff was told that it had been lost; as a result, Plaintiff completed and resubmitted a second HAMP application package. (Am. Compl. ¶¶ 13-14).

Plaintiff stopped making payments on her mortgage starting in November 2012 pursuant to the instructions of Nationstar's representative. (Am. Compl. ¶ 15). Each Monday between November 2012 and March 2013, Plaintiff alleges she contacted Nationstar to inquire about the status of the modification request contained in her HAMP application; as of March 4, 2013, a Nationstar representative informed her that the application was still being processed by the company. (Am. Compl., ¶¶ 16-17).

Despite the instructions to Plaintiff to stop making mortgage payments and communications that the loan modification application was being processed, Nationstar foreclosed on Plaintiff's Property on March 5, 2013. (Am. Compl. ¶ 18). Plaintiff was not aware of the sale because Nationstar did not mail her a notice of foreclosure. (Am. Compl. ¶ 19). As a result, Plaintiff continued to follow up with Nationstar about the loan modification, which she continued to be told was still being processed. (Am. Compl. ¶ 20). Plaintiff only found out about the foreclosure and sale of the Property when she received a "cash for keys" offer by a third-party owner in April 2013, which was followed a week later by a dispossessory warrant. (Am. Compl. ¶¶ 21-22).

Plaintiff alleges she never received from Nationstar any communication stating that her loan modification request had been denied; that she would be held to the strict terms of the security deed; or that she had a set number of days to cure the deficiency

AO 72A
(Rev.8/82)

created when she stopped making her mortgage payments. (Am. Compl. ¶¶ 23-24).

Plaintiff contends that Nationstar, through its instructions and communications, misrepresented – either knowingly or negligently – that it would evaluate her request for a loan modification after she was three months behind on her payments, when it in fact had no intention of doing so, and in fact never considered her loan modification request. (Am. Compl. ¶¶ 25-32). Plaintiff alleges her reliance upon Nationstar's instructions and communications was reasonable and justified, and that they induced her to fall behind on her payments, fail to cure the deficiency created, and failed to allow her to recommence paying her mortgage, all of which resulted in damages, including the default on her mortgage loan, foreclosure on the Property, eviction from the Property; and emotional distress. (Am. Compl. ¶¶ 36-40).

### III.  **DEFENDANTS' MOTION TO DISMISS**

Defendants[4] moved to dismiss Plaintiff's Amended Complaint on May 18, 2015. (Doc. 35). In support of their Motion to Dismiss, Defendants argue that the Plaintiff's Amended Complaint should be dismissed for three reasons. (Doc. 35-1). First, Defendants contend that Plaintiff's proposed claims for fraudulent and negligent misrepresentation are not allowed by the District Court's March 11, 2015 Order. (Id., pp. 4-5). Second, Defendants argue Plaintiff's claims are barred by the Georgia statute of frauds because the alleged misrepresentations relate to agreements concerning

---

[4] Although the claims in the Amended Complaint appear to be asserted solely against Nationstar, the motion is asserted on behalf of Nationstar, Fannie Mae, and MERS. (Doc. 35).

7

interests in real property and/or to loan money, and are not contained in writing. (Id., pp. 6-7; see also Doc. 39, pp. 4-6). Finally, Defendants assert that Plaintiff's claims do not state with sufficient particularity the required element of justifiable reliance. (Doc. 35-1, pp. 8-9; see also Doc. 39, pp. 6-7).

## IV.   LEGAL ANALYSIS

### A.   Plaintiff's Amended Complaint Complies with the District Court's March 11, 2015 Order

As an initial matter, Plaintiff's Amended Complaint conforms to the requirements laid out in the District Court's March 11, 2015 Order. That order explicitly granted leave to Plaintiff to file an amended complaint. (Doc. 26, p. 2). The District Court allowed Plaintiff leave to reassert "[t]hree claims in particular": claims under TILA, claims for fraud, and claims based upon clouded title. (Id., p. 3). As noted above, the District Court stated simply that "if Plaintiff intends to renew her . . . fraud claims . . . she must make allegations as to the specific facts of any such violation." (Id.)

Defendants argue that the separate instruction in the March 11, 2015 Order – that "[i]f Plaintiff intends to renew her assertion that her debt has been discharged and Defendants therefore fraudulent enforced the security deed . . . she must alleged that the debt was paid," limits the scope of any fraud claim that may be asserted in the Amended Complaint. (Doc. 35-1, p. 4-5). However, contrary to Defendants' construction, that statement is a specific instruction regarding the requirements of any TILA or fraud claim *that is based upon an alleged discharge of debt*. It is clear from the prior instruction that the Court would allow TILA and fraud claims so long as the allegations were specific

8

enough in relation to the alleged violations. The instruction Defendants' point to, regarding claims based upon the alleged discharge of Plaintiff's secured debt, were specifically aimed at that particular type of TILA or fraud claim, which was previously asserted in the original Complaint.

No where did the District Court suggest that Plaintiff could only assert TILA or fraud[5] claims based upon the discharge of Plaintiff's secured debt. Had the Court intended to so limit the scope of Plaintiff's amendments, it could have easily done so – by stating as much directly. It did not do so. Moreover, the District Court's May 14, 2015 Order was very clear that if Plaintiff sought leave of the Court, other claims, beyond those three types allowed by the March 11, 2015, would be considered by the Court. (See Doc. 39). It is unlikely the District Court would have invited additional amendments in such a fashion, while so severely proscribing them elsewhere. Because of this, the undersigned finds that Plaintiff's First Amended Complaint complies with the District Court's March 11, 2015 Order, and Defendants' Motion to Dismiss should be **DENIED** in this regard.

---

[5] The parties do not dispute the fraudulent and negligent misrepresentation claims are species of fraud claims. See Breckenridge Creste Apartments, Ltd. v. Citicorp Mortgage, Inc., 826 F. Supp. 460, 466 (N.D. Ga. 1993), aff'd sub nom., Breckenridge Creste v. Citicorp, 21 F.3d 1126 (11th Cir. 1994).

B.   **Plaintiff's Amended Complaint Plausibly States Claims for Fraudulent and Negligent Misrepresentation**

1.   12(b)(6) Motion to Dismiss Standard

Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of a plaintiff's complaint, there is a dispositive legal issue which precludes relief or it is based on an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford Cnty., 960 F.2d 1002, 1009-10 (11th Cir. 1992). A motion to dismiss also tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To state a claim with sufficient specificity requires that the complaint have enough factual matter taken as true to suggest the required elements of the claim. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1296 (11th Cir. 2007); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)). Thus, the factual allegations must suggest a plausible right to relief, which requires more than the "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and

10

plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).

### 2. Plaintiff's Claims Are Not Barred by the Statute of Frauds

Defendants argue Plaintiff's claims for fraudulent and negligent misrepresentation are barred by Georgia's statute of frauds because the oral communications on which they are based – those between Plaintiff and Nationstar representatives – are essentially promises relating to Plaintiff's mortgage and the modification of her mortgage loan, which under the statute of frauds, must be in writing. (Doc. 35-1, pp. 6-7; see also Doc. 39, pp. 4-6). Plaintiff counters that the statute of frauds either does not apply, because the misrepresentations did not actually relate to the mortgage loan or a modification agreement directly, or that detrimental reliance and/or partial performance exempt the claims from the statute of frauds writing requirement. (Doc. 37).

Under Georgia's statute of frauds, no "contract for sale of lands," "interest in, or concerning lands," or "commitment to lend money" is "binding on the promisor" unless it is "in writing and signed by the party to be charged therewith." O.C.G.A. §§ 13-5-30(4) & (7). Moreover, just as any such contract must be in writing, "any modification of the contract must also be in writing." RHL Props., LLC v. Neese, 293 Ga. App. 838, 840-41, 668 S.E.2d 828, 830 (Ga. Ct. App. 2008) (citation omitted). Thus, an agreement to reinstate or modify a mortgage loan is unenforceable unless it is in writing. See, e.g., Allen v. Tucker Fed. Bank, 236 Ga. App. 245, 246, 510 S.E.2d 546, 547 (Ga. Ct. App. 1998) (holding that a claim that the "Bank orally agreed to reinstate [the borrower's]

11

AO 72A
(Rev.8/82)

mortgage following foreclosure [was] untenable in the absence of a written agreement"); see also DeSouza v. Fed. Home Mortg. Corp., 572 F. App'x 719, 723 (11th Cir. 2014) (citing Allen); Vie v. Wachovia Bank, N.A., No. 1:11-CV-3620-RWS, 2012 WL 1156387, at *4 (N.D. Ga. Apr. 6, 2012) (deciding that under Georgia's statute of frauds, any agreement to modify a loan was unenforceable when the borrower "failed to make a plausible showing that a valid written modification existed between the parties"); Ogburn v. Chase Home Fin. LLC, No. 1:11-CV-1856-TWT, 2011 WL 5599150, at *2 (N.D. Ga. Nov. 16, 2011) (borrower's claim that lender promised to refinance a mortgage was barred when borrower failed to allege that a written contract existed); Kabir v. Statebridge Co., LLC, No. 1:11-CV-2747-WSD, 2011 WL 4500050, at *7 (N.D. Ga. Sept. 27, 2011) ("Oral and unwritten agreements regarding interests in lands; to include reinstating a mortgage, refinancing a mortgage, or forbearing from foreclosure proceedings; are unenforceable under the Georgia Statute of Frauds").

More importantly for present purposes, "one cannot sue in fraud based upon the alleged breach of an oral contract which would itself be unenforceable under the Statute of Frauds." Kamat v. Allatoona Fed. Sav. Bank, 231 Ga. App. 259, 262, 498 S.E.2d 152, 155 (Ga. Ct. App. 1998) (citation omitted).  Thus, when a plaintiff sues for fraudulent misrepresentation on the basis of a false promise to modify a mortgage loan or to forego foreclosure, the statute of frauds typically applies to bar such claims. See Vie, 2012 WL 1156387, at *1, 4.

Plaintiff's present fraud claims, however, are premised not on Nationstar's

12

promise to modify her mortgage loan or suspend a foreclosure sale, but rather on its misrepresentation that it would *consider and evaluate* her HAMP application for a loan modification after she was three months delinquent on her mortgage payments, when it in fact never intended to do so. Very recently, a Court in this district has stated:

> Whether the Georgia statute of frauds bars [a plaintiff] from asserting a fraud claim against [a mortgage lender] for promising to review their modification application while knowing that it did not intend to do so is a far closer question than [most cases otherwise] suggest.

Sheely v. Bank of Am., N.A., 36 F. Supp. 3d 1364, 1375 (N.D. Ga. 2014). In Sheely, the plaintiffs' claim was "not that [the lender] breached an oral contract to grant them a modification or to halt a foreclosure sale pending review of their modification request," as was the case in Vie, but instead that the lender "knowingly represented that it was processing the documents that [the plaintiffs] sent in for review when [lender] was in fact not reviewing the documents for a modification." Id., at 1375 & n.12. In Sheely, while the Court dismissed the fraud claims on the basis of other failings, it clearly and affirmatively stated that the claim would not be dismissed with prejudice under the statute of frauds. (Id., at 1374-75). Here, Plaintiff asserts her fraud claims in a similar manner to the plaintiffs in Sheely:

> [T]he representation relied upon by [Plaintiff] in the present case was neither an agreement to modify a loan, nor was it an agreement to suspend foreclosure. Rather, it was a [representation that Nationstar would] properly consider [Plaintiff] for a loan modification if she defaulted on her loan payments.

(Doc. 37, pp. 10-11). The facts alleged by Plaintiff in her Amended Complaint thus match those asserted in Sheely. This Court therefore agrees that, taking the allegations

13

in the Amended Complaint in the light most favorable to Plaintiff, the gist of Plaintiff's misrepresentation claims are that Nationstar misrepresented that it would consider and evaluate Plaintiff's HAMP application in good faith, not that it falsely promised to modify Plaintiff's loan and/or suspend any foreclosure sale. Thus, Plaintiff's claims relate not to a loan or an interest in land, but rather the conduct of an administrative act – that is, reviewing Plaintiff's HAMP application – which is outside the purview of the Georgia statute of frauds. As a result, the statute of frauds should not apply to bar Plaintiff's claims.

Relatedly, even if the Georgia statute of frauds did apply to the misrepresentations at issue in this case, courts have allowed such claims to proceed on the basis of detrimental reliance or partial performance. Claims otherwise subject to the statute of frauds are exempted "[w]here there has been performance on one side, accepted by the other," or "[w]here there has been such part performance of the contract as would render it a fraud of the party refusing to comply . . . ." O.C.G.A. §§ 13-5-30(2), (3). Along these lines, when a plaintiff pleads that a lender "fraudulently misrepresented the status of the mortgage modification and led her to believe that the modification of her mortgage had been approved and that the property would not be foreclosed upon," sufficient factual allegations have been set forth at the pleading stage to "support a theory of part performance or equitable estoppel, and therefore preclude application of a statute of frauds defense." Stimus v. CitiMortgage, Inc., No. 5:10-CV-435-MTT, 2011 WL 2610391, at *5 (M.D. Ga. July 1, 2011). Plaintiff's allegations – that she was told her

14

application would be considered after (and only after) three months of delinquency and that she was repeatedly assured that her application for modification was being considered when in fact it was not – could support the contention that Plaintiff performed an obligation set as a condition precedent to the good faith evaluation of her HAMP application, and therefore her claims may be exempt from the statute of frauds (assuming *arguendo*, that the statute of frauds applies). Accordingly, at this stage, Plaintiff's fraud claims survive Defendants' challenge based upon the statute of frauds, and Defendants' Motion to Dismiss Plaintiff's claims based upon the statute of frauds should be **DENIED**. (Doc. 35).

### 3. Plaintiff has Pleaded Justifiable Reliance

Defendants last argue Plaintiff has not alleged that she was sufficiently justified in relying on Nationstar's purported misrepresentations. (Doc. 35-1, pp. 8-9; see also Doc. 39, pp. 6-7). In support, Defendant cites primarily to Adams v. JPMorgan Chase Bank, No. 1:10-CV-04226-RWS, 2011 WL 2532925 (N.D. Ga. June 24, 2011), arguing that Plaintiff was not justified in relying on the mere expression of hope by Nationstar's representative about the status of her loan modification.[6] (Doc. 35-1, pp. 8-9). While Defendants are correct that Plaintiff must allege facts supporting justifiable reliance,[7] the

---

[6] Defendants also cite to Todd v. Martinez Paint & Body, Inc.. 238 Ga. App. 128, 517 S.E.2d 844 (1999). That case, which Adams cites for black-letter law (as do Defendants), deals with an employment relationship and misrepresentations in the onboarding process, and therefore does not create factual parallels to the instant case.

[7] "Misrepresentations are not actionable unless the complaining party was justified in relying thereon in the exercise of common prudence and diligence. . . .

15

facts alleged in Adams are distinguishable from those alleged by Plaintiff. In Adams, the plaintiff claimed that he had been repeatedly assured by his lender's customer service representatives that foreclosure activity against his property had ceased. Id. at *5-6. However, in Adams, the plaintiff had actually received a foreclosure notice from the lender's attorneys, but failed to contact the attorneys who sent him that foreclosure notice, instead relying solely on the customer service communications to the contrary. Id. It was because the Adams plaintiff had more or less deliberately ignored the "legal notices of foreclosure," that the court determined that he had failed to exercise due care in relying on the customer service representatives' statements. Id.

Unlike the plaintiff in that case, Plaintiff here has alleged justifiable reliance. The Amended Complaint's allegations are clear that no one ever suggested that foreclosure was a possibility, much less that Nationstar's legal counsel sent her multiple notices of foreclosure. Rather, Plaintiff alleges she was instructed not to pay her mortgage, that she was never notified her Property might be foreclosed upon, that she never received any notice of foreclosure, and that she only learned that her house had been sold at foreclosure after the third-party buyer offered her money to evacuate the Property. (See Am. Compl.). In such instances, justifiable reliance is sufficiently alleged. See Stimus, 2011 WL 2610391, at *5 (for motion to dismiss purposes, justified reliance was

---

[and] a party is not justified in relying on and assuming to be true representations consisting of mere expressions of opinion, hope, expectation, puffing, and the like; rather, representations of this nature must be inquired into and examined to ascertain the truth." Todd, 238 Ga. App. at 129, 517 S.E.2d at 845 (internal quotations and citations omitted).

16

sufficiently pleaded based upon repeated misrepresentations regarding the status of a mortgage loan modification application, which led plaintiff to believe that the modification of her mortgage would be or had been approved and that the property would not be foreclosed upon). Thus, for pleading purposes, Plaintiff has sufficiently alleged justifiable reliance in her claims for fraudulent and negligent misrepresentation. Accordingly, Defendants' Motion to Dismiss should be **DENIED**. (Doc. 35).

## V. DEFENDANTS' MOTION TO STAY

On a procedural note, Defendants' have requested a stay of all discovery deadlines, including deadlines for conducting the parties' Rule 26(f) conference, completing initial disclosures, preparing a joint preliminary report and discovery plan, and commencing discovery until after the Court's ruling on their Motion to Dismiss. (Doc. 36). Because the scope of discovery is dependent upon the scope of Plaintiff's claims, which in turn depends on the Court's ruling on the present Motion to Dismiss, Defendants have shown good cause for a stay of discovery-related deadlines. Accordingly, the Motion to Stay is **GRANTED**. (Doc. 36). Should the District Court adopt the undersigned's report and recommendation concerning Defendant's Motion to Dismiss, the parties are **ORDERED** within twenty-one (21) days to conduct the Rule 26(f) conference, complete initial disclosures, and submit a joint preliminary report and discovery plan. After the submission of the joint preliminary report and discovery plan, the Court will issue a scheduling order to include discovery deadlines and dispositive motion guidelines.

17

## VI. CONCLUSION

For the reasons discussed above, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss be **DENIED**. (Doc. 35). For good cause shown, Defendants' Motion to Stay is **GRANTED**. (Doc. 36).

**SO REPORTED AND RECOMMENDED**, this   25   day of January, 2016.

/s/LINDA T. WALKER
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)